Helen Tesar, Appellee, v. Frank Tesar, Appellant.

Gen. No. 47,133.

First District, First Division.
May 10, 1957.
Released for publication June 10, 1957.

Theodore F. Lownik and Herman R. Tavins, of Chicago (Herman R. Tavins, of Chicago, of counsel) for appellant.

Lawrence C. Boyle, of Chicago, for appellee.

JUDGE BURKE delivered the opinion of the court. Helen Tesar and Frank Tesar were married at Chicago on September 30, 1939. Three children were born to them, namely, Frank Joseph, Ronald Spencer and

Kenneth Miles. On January 6, 1956, the wife filed a complaint for divorce and other relief, charging that the defendant was guilty of extreme and repeated cruelty on December 16, 1955, and December 30, 1955.

In an answer the defendant denied the charges of cruelty. Following a trial the chancellor entered a decree finding defendant guilty of extreme and repeated cruelty toward the plaintiff without cause or provocation on December 16, 1955, and December 30, 1955, as charged in the complaint, and that plaintiff is a proper person to have the care and custody of the children. The decree dissolved the bonds of matrimony, awarded the care and custody of the children to plaintiff, awarded to plaintiff sole possession and occupancy of the matrimonial domicile of the parties for the use of plaintiff and the children, retained jurisdiction for the purpose of determining permanent alimony, child support, costs, attorney's fees, accrued household bills and the equitable distribution of the realty and personalty owned by the defendant "and/or with plaintiff including savings and deposits in the name of defendant" and directed defendant to pay to plaintiff's attorney the additional sum of $300.

Plaintiff testified that they lived in an apartment of a two-flat building at 8957 South Carpenter Street, Chicago, owned by them "jointly"; that on December 16, 1955, in their apartment the defendant struck her on the head and on December 30, 1955, in their apartment, he awakened the children at 5:00 A. M. and "took a poke" at her that caused her skin to peel; and that he struck her on the head. The only witness called by the plaintiff to corroborate her testimony was Ruby Mack, who testified that she is a tenant of the parties, that she resides "in the top flat" and they reside in the "basement flat." The attention of this witness being called to the date of December 30, 1955, she said that "something awakened us early in the morning, and

479

there was a commotion downstairs"; that the noise awakened her husband and herself; and that in a conversation with the plaintiff that day or the following day the plaintiff told the witness that defendant had struck her. To the question, "Did she tell you where he struck her?" the witness answered, "I believe he knocked her out or something." To the question, "Did you see a mark on her temple?" the witness answered, "Yes." Defendant's attorney had withdrawn from the case and he was not represented. He did not testify.

The complaint charges and the decree found that the defendant on December 16, 1955, did forcibly kick the plaintiff on her body and right thigh. The testimony of plaintiff was that on December 16, 1955, the defendant struck her on the head. There was no corroboration of plaintiff's testimony that defendant struck her on the head on December 16, 1955. The second act of cruelty charged in the complaint is that on December 30, 1955, the defendant struck plaintiff with his clenched fist on her left temple, knocking her against a table and to the floor, and pummeled her about the chest and body with great force and violence. Her testimony in support of this charge was that the defendant awakened the children at 5:00 A. M. and "took a poke" at the plaintiff that caused her skin to peel. The only corroborating evidence is that of Ruby Mack, who testified that on December 30, 1955, she heard a commotion and that on either the same day or the next day she saw a mark on plaintiff and that she told the witness that defendant had struck her. We do not think that plaintiff proved her charge of extreme and repeated cruelty. Slight acts of violence by either spouse are not extreme cruelty within the statute authorizing divorce on such grounds. Amberson v. Amberson, 349 Ill. 249; Aurand v. Aurand, 157 Ill. 321; Coolidge v. Coolidge, 4 Ill.App.2d 205.

■ There was no attempt to corroborate the alleged first act of cruelty. We have held that a divorce will not be granted upon uncorroborated testimony as to alleged acts of cruelty. Coolidge v. Coolidge, 4 Ill.App.2d 205, 216. In Jackson v. Jackson, 294 Ill. App. 552, the chancellor's finding that the husband was guilty of cruelty was reversed because there was corroboration only as to one of the charges. See also Whitlock v. Whitlock, 268 Ill. 218. The plaintiff failed to sustain her charges of extreme and repeated cruelty and the court erred in entering a decree dissolving the marriage.

The case was submitted and taken by the court on March 4, 1957. The death of the plaintiff on March 25, 1957, was suggested of record. In Danforth v. Danforth, 111 Ill. 236, the court said (243):

"On the reversal of a decree of divorce, the parties will be placed in the position they occupied before the decree was entered, and if one of them has died between the date of the decree of divorce and its reversal, the survivor procuring the reversal will be entitled to all rights of succession or dower, and the like, in the estate of the other, the same as if no divorce had ever been had; but in such case the court need not ordinarily remand the case, as no other decree of divorce can ever be had."

The Danforth case is authority for entering the judgment in this court nunc pro tunc prior to the date of the death of the plaintiff. Therefore this opinion will be entered nunc pro tunc as of March 8, 1957.

For the reasons stated the decree of the Superior Court of Cook County is reversed and the cause is remanded with directions to dismiss the complaint for want of equity.

Decree reversed and cause remanded with directions.

NIEMEYER, P. J. and FRIEND, J., concur.