*In re* MARRIAGE OF WILLIAM EARL McDONALD, Petitioner-Appellant, and HARRIET KATHERINE McDONALD, Respondent-Appellee.

Fourth District   No. 4—82—0463

Opinion filed March 3, 1983.

Robert A. Mathis, of Rantoul, for appellant.

Stephen R. Frank, of Johnson, Frank & Frederick, of Urbana, for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

The marriage of the parties was dissolved by a judgment order of the circuit court of Champaign County and in the same order the court made a distribution of marital property and awarded maintenance to the respondent wife. The petitioner husband appeals certain provisions of the property distribution and the award of maintenance.

Petitioner is a farmer and tills about 540 acres of land of which the parties owned 80 and the balance was on lease arrangements. Respondent had been a beautician and operated her own shop, but at the behest of petitioner had sold the shop on contract in 1978. Thereafter she assisted petitioner in the farming operations. The record indicates that the parties enjoyed a substantial income and had accumulated substantial assets, including a luxury automobile and a vacation home in Florida with a boat and an additional automobile located there. Petitioner had previously been employed by the University of Illinois, but took up farming as his sole occupation about 11 years prior to the dissolution.

An examination of the record discloses that the trial court carefully considered all of the elements set forth in section 503 of the Illinois Marriage and Dissolution of Marriage Act concerning disposition of property and section 504 concerning maintenance. (Ill. Rev. Stat. 1981, ch. 40, pars. 503, 504.) The parties were in substantial agreement about the nature and valuation of their assets. Without going into unnecessary detail, we observe that petitioner was awarded the marital home and the equipment and machinery needed in farming operations; he was also ordered to assume substantial indebtedness which derived from those farming operations. Respondent was awarded the Florida property, together with the boat and car, the contract on the beauty shop, the luxury automobile, and certain cash items. Each took certain expensive jewelry items and petitioner was awarded his University of Illinois retirement fund. The 80 acres owned by the parties was divided equally, and it appears that the household goods were divided by agreement.

In round figures petitioner received 47% of the net assets and respondent received 53%. Respondent was also awarded $350 per month maintenance.

One of petitioner's chief complaints relates to grain on hand which had an approximate value of $66,000. The trial court divided this by ordering petitioner to pay to respondent $30,000 as her share. Petitioner claims that this payment will so strip him of available money as to make farming operations impossible. He makes the same argument as to the award of maintenance.

To support his argument petitioner offered copies of his Federal income tax returns for the years 1978, 1979, and 1980, which were received into evidence. Two of these returns show losses from farming operations and the third shows a small profit, although the Schedules "F" attached show substantial income. The difference is attributable to large amounts of depreciation and tax credits.

The use of Federal income tax returns as proof of financial status has become a common practice, particularly in marital litigation. It cannot be doubted that they are admissible, given the proper foundation proof. However, we regard them as much less than conclusive in determining cash flow and hence the ability to pay either sums awarded to the other spouse or maintenance. It is a matter of common knowledge that income may be sheltered from taxation by a variety of legal tax maneuvers, the most common of which is depreciation. Unless it be funded, it represents available funds. If farming operations are to continue in the future, obviously the asset must eventually be replaced. It therefore becomes incumbent on the trier of

fact to determine as best he can what disposition is being made of the funds generated through depreciation or other sheltered income: is it being reserved to fund future operations; or is it being used to meet current business expenses, including principal and interest payments on any installment loan, contracts, or other similar liabilities; or is it being used for things not connected with business; or just what is its disposition? This, then, will require a balancing test: *viz.*, the disposition of the current cash flow versus the ability to pay in a dissolution proceeding.

If a spouse pleads an inability to pay, something more than a copy of a tax return is necessary to establish a preponderance of such evidence. Expert testimony would be one method which comes immediately to mind. Others may occur to imaginative counsel.

As applied to the instant case, we find petitioner's argument without merit. The tax returns do not demonstrate that he will be unable either to continue farming or to pay maintenance. In its judgment order the trial court stated in part: "In connection with Petitioner's ability to make maintenance payments, the Court has considered the fact that Petitioner is able to shelter certain of his income through tax deductions and credits available to him."

■ The standard of review of a property division is that the trial court's judgment will be disturbed only upon a showing of abuse of discretion. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court but whether the trial court acted arbitrarily without the employment of conscientious judgment. It can be said that a trial court's discretion is abused only where no reasonable man would take the view adopted by the trial court. (*Lee.*) Furthermore, the Illinois Marriage and Dissolution of Marriage Act does not prescribe an equal division of the marital property. (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382.) In dividing marital property, if the court has considered all the factors set out in section 503 of the Illinois Marriage and Dissolution of Marriage Act, its discretion will only be reversed where no reasonable man would take the view adopted by the trial court. *In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 419 N.E.2d 662.

■ We find no abuse of discretion in the property division. Nor do we find any abuse in the award of maintenance. The trial court carefully considered all the factors, as mentioned above. It also indicated that most of the property awarded to respondent was not of an income-producing variety. (Compare *In re Marriage of Thornton*

(1980), 89 Ill. App. 3d 1078, 412 N.E.2d 1336.) Further, the age of respondent is such that it would be unconscionable to require her to return to work as a beautician; and even if she did, it would require a number of years to build up a clientele. The manifest weight of the evidence is in favor of maintenance.

■ Petitioner also contends that the trial court abused its discretion in not permitting him to reopen the proofs to show a decline in valuations of farm equipment.

The evidence of value was received on January 20, 1982. Petitioner then stipulated to that value. The trial court took the case under advisement and rendered its judgment order on April 5, 1982. Petitioner then filed a post-trial motion and appended to it a handwritten letter and new valuations of the farm machinery. He argues that the new inventory shows a deflation in value of about $40,000 during the time the trial court had the matter under advisement. The trial court denied the motion.

It is difficult to determine the exact nature of what was intended by the post-trial motion regarding the farm machinery. It was not a motion to reopen the proofs. If it had been, it is doubtful if the motion were well-taken. (Compare *In re Marriage of Rogers* (1980), 86 Ill. App. 3d 904, 408 N.E.2d 448.) As the motion stands, it simply states that the trial court erred in fixing the stipulated value. We find it difficult to perceive how error can be predicated on a stipulation. The contention is without merit.

The judgment order of the circuit court of Champaign County is affirmed.

Affirmed.

TRAPP and GREEN, JJ., concur.