*In re* MARRIAGE OF DONALD A. BURROWS, Petitioner-Appellee, and PHILOMENA D. BURROWS, Respondent-Appellant.

First District (1st Division)   No. 83—1834

Opinion filed July 30, 1984.

Lois Solomon, of Solomon & Behrendt, and Charlotte Adelman, both of Chicago, for appellant.

Jack F. Kuhlman, of Collis, Kuhlman & Scott, Ltd., of Hinsdale, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Respondent, Philomena D. Burrows, appeals from a judgment granting petitioner Donald A. Burrows' petition for dissolution of marriage and denying her counterpetition for legal separation. Respondent raises the following issues on appeal: (1) whether petitioner

proved grounds for dissolution of marriage pursuant to section 401(2) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 401(2)); (2) whether the trial court erred in merging an arrearage in unallocated child support payments into the judgment for dissolution; (3) whether the division of marital property was in "just proportions" pursuant to section 503(c) of the Act (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)); and (4) whether the award of attorney fees was reasonable.

The record discloses that the parties were married on March 3, 1962, in Chicago. Three children were born to the marriage. On October 14, 1982, the time of the hearing, 9-year-old Quentin was residing with respondent, and Jennifer and Charles, 19 and 17 years of age respectively, were attending college out of town. Petitioner holds a bachelor of arts degree from the University of Chicago and a master of arts degree from the Art Institute of Chicago. At the time of the trial, petitioner was employed full-time with the Harrington Institute of Interior Design, with a net income of approximately $39,300. Prior to the hearing, petitioner also held a full-time position as assistant professor of humanities at the City College of Chicago. Respondent has the equivalent of a high school education, although she does not have a high school diploma. During the marriage she held jobs as a day-care assistant, a cleaning lady and a baby-sitter and at the time of the trial she was cleaning homes. Petitioner testified that respondent had also worked as a nurse's aid, in retail sales and in an office during the marriage.

The record further discloses that in 1976 petitioner left the marital residence for a 9- to 10-month period during which time he filed a suit for divorce which was subsequently dismissed. On March 29, 1981, petitioner again left his family and in August 1981 he filed the instant petition for dissolution of marriage alleging mental cruelty as grounds. Respondent then filed a counterpetition for legal separation based upon mental cruelty by petitioner. Respondent also filed a petition for the temporary care, custody and control of the parties' children, and requested an award of maintenance during the pendency of the matter. The respondent's petition was granted and petitioner was ordered to pay respondent $2,000 a month as unallocated temporary child support and maintenance, commencing on November 4, 1981.

The trial took place on four separate dates between October 14, 1982, and February 24, 1983. Extensive testimony was presented and a brief summary is presented here.

Petitioner testified that respondent constantly nagged and criticized him; that she was guilty of verbal abuse in front of the children;

that the parties' constant arguing made the home "almost like a combat zone"; that she accused him of child abuse; that she would often not speak to him; that there were no sexual relations for five years; that she accused him of being a homosexual; and that she was critical of his education and art background. Petitioner asserted that he was not the cause of respondent's conduct, that he did not provoke her actions, that he appealed to her with kindness and understanding to stop nagging him, and that he tried conscientiously to be a good husband and a good father. Petitioner's testimony regarding respondent's conduct was corroborated in part by the testimony of the parties' eldest son, Charles.

Respondent testified that she received an allowance from petitioner but that petitioner's refusal to give her more money was a constant cause of marital discord. In particular, respondent noted petitioner's refusal to give her money to go to her father's funeral, as well as his failure to provide sufficient money for the children's needs. Respondent also testified that petitioner told her on numerous occasions that he wanted a divorce and that he urged her to abort their youngest child during her pregnancy. According to respondent, petitioner verbally abused her with regard to her ethnic and educational backgrounds. Respondent further testified that petitioner was a manic-depressive and that during these periods of depression he drank heavily, threatened to abandon the family and threatened to commit suicide. Petitioner admitted that he suffered from depression, nervousness and headaches and that he drank to excess, but he claimed the problems stemmed from the unhappy atmosphere at home. Respondent's testimony regarding the petitioner's behavior was corroborated in part by the parties' eldest daughter, Jennifer.

On June 29, 1983, the trial court entered a judgment of dissolution of marriage which provided for the following property division: $400 to both parties from the net proceeds of the sale of rental property; $8,513 to respondent and $12,769 to petitioner from petitioner's Illinois retirement fund; $1,120 to respondent and $6,352 to petitioner from a tax refund; $1,200 to respondent and $1,800 to petitioner from petitioner's American Benefit Plan. Respondent was awarded the family's 1980 Chrysler automobile and exclusive use of the marital home until Quentin, the youngest son, is 18 years old. At that time, the home is to be sold and respondent is to receive 75% of the sale proceeds. Respondent was given sole responsibility for the mortgage payments until the home is sold. Additionally, upon petitioner's retirement, respondent will participate in petitioner's Harrington Institute pension based upon a formula set out in the decree. The parties were

also each awarded "those items of household furniture and furnishings and personal belongings now in each other's possession," and other property listed on a property schedule agreed upon by the parties. Respondent was further awarded $1,200 per month in unallocated support for herself and the minor child and the parties are required to each pay the college expenses of the parties' children "to the best of his or her financial ability." Lastly, the court ordered petitioner to pay $5,000 of the respondent's $14,751.75 attorney fees.

■ Respondent first contends that petitioner failed to prove the statutory grounds of mental cruelty as required by section 401(2) of the Act and thus the trial court erred in granting the dissolution. Before a petition for dissolution on grounds of mental cruelty can be granted, the Act requires petitioner to show that he has not provoked the conduct constituting mental cruelty. (Ill. Rev. Stat. 1981, ch. 40, par. 401(2); *In re Marriage of Ducey* (1981), 101 Ill. App. 3d 957, 428 N.E.2d 1165.) Respondent claims that although she and petitioner testified to a troubled marriage with frequent arguments, any objectionable conduct by respondent was clearly provoked by the petitioner's behavior. As such, the statutory element of lack of provocation by petitioner was not satisfied and the dissolution was improperly granted. Respondent further argues that petitioner failed to satisfy the requirement of showing that the alleged mental cruelty has affected the petitioner's physical or mental health. (*In re Marriage of Rittmeyer* (1982), 107 Ill. App. 3d 892, 438 N.E.2d 237.) Therefore, according to the respondent the dissolution should not have been granted.

Section 401(2) of the Act provides that:

"The Court shall enter a judgment of dissolution of marriage *** if:

* * *

(2) the court finds that, without cause or provocation by the petitioner: either party *** has been guilty of extreme and repeated physical or mental cruelty ***." (Ill. Rev. Stat. 1981, ch. 40, par. 401(2).)

It is clear from the language of section 401(2) that the mental cruelty must be "without cause or provocation by the petitioner" in order for a dissolution of marriage to be granted. Mental cruelty has been defined by this court as a course of unprovoked conduct toward one's spouse which cases embarrassment, humiliation and anguish so as to render the spouse's life miserable and unendurable. (*In re Marriage of Ducey* (1981), 101 Ill. App. 3d 957, 428 N.E.2d 1165.) Therefore, to prove a case entitling a spouse to a dissolution on the grounds of mental cruelty, the evidence must show that the conduct of the of-

fending spouse is unprovoked and constitutes a course of abusive and humiliating treatment that makes the life of the complaining spouse miserable.

■ Here, in support of his allegation of mental cruelty, petitioner testified to the absence of any conduct on his part which would cause respondent to behave as she did. This testimony was sharply disputed, but nevertheless, the finding of lack of provocation was a matter for the trial judge to determine and we will not disturb that finding unless contrary to the manifest weight of the evidence. Moreover, petitioner's testimony that he suffered from headaches, nervousness, tenseness and depression was corroborated by respondent and supported the court's determination that petitioner proved his allegation of mental cruelty. Accordingly, we find no error in the trial court's judgment granting petitioner a dissolution of marriage based upon mental cruelty.

■ Respondent next contends that the trial court erred in merging the petitioner's arrearage in unallocated temporary child support and maintenance payments into the judgment for dissolution. The trial court's November 20, 1981, order required petitioner to pay respondent $2,000 a month as temporary support during the pendency of the matter. Although petitioner's request for reduction in the temporary support payments was denied, petitioner reduced the payments to $1,000 a month for the period from May 1981 to October 1982. In October 1982 respondent filed a petition for rule to show cause why petitioner should not be held in contempt of court for failure to make the temporary support payments. The petition alleged an accumulated arrearage of $4,902.18. An October 7, 1982, order reduced support to $1,000 a month and stated that the issue of an arrearage would be taken under advisement. On December 15, 1982, the court again ruled that the arrearage issue would be taken under advisement. Finally, in the judgment for dissolution, the trial court provided that any arrearage was merged into the judgment for dissolution. Respondent claims that her right to the payments vested at the time that each payment became due and therefore the trial court could not retroactively modify the payments.

It is well established that past-due installments of support are a vested right and the court has no power to modify the award retroactively. (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 436 N.E.2d 228; *Collins v. Collins* (1977), 47 Ill. App. 3d 258, 361 N.E.2d 787.) In the instant case, there was no finding by the trial court that an arrearage existed. When questioned about the arrearage by respondent's attorney, the trial judge stated that he thought the arrear-

age had been "squared away" by the concessions made in dividing marital property. Because respondent would have a vested right to any past-due temporary support payments, a finding that petitioner was in default with regard to those payments was imperative to a determination regarding the satisfaction of the arrearage. Accordingly, we remand this cause of action for a specific hearing on the issue of an arrearage.

■ Respondent also argues that the trial court erred in awarding petitioner almost double the marital property awarded to respondent. The trial court's division of marital property will be reversed only where "no reasonable man would take the view adopted by the trial court." (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 1127, 398 N.E.2d 126, 129.) Furthermore, it is well established that section 503(c) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 503(c)) does not require that marital property be divided in equal shares. (*In re Marriage of McDonald* (1983), 113 Ill. App. 3d 116, 446 N.E.2d 559; *In re Marriage of Cleveland* (1981), 99 Ill. App. 3d 293, 425 N.E.2d 475.) In dividing marital property, if the court has considered all the factors set out in section 503, its discretion will not be reversed. (*In re Marriage of McDonald* (1983), 113 Ill. App. 3d 116, 446 N.E.2d 559.) Based upon this record, we are not convinced that the trial court's division of marital property was so unreasonable as to constitute an abuse of the court's discretion.

■ Respondent's final contention is that the trial court's award of attorney fees was unreasonable. Respondent's petition for attorney fees itemized 188.49 hours spent by her attorney in this matter at a cost of approximately $14,000. At the hearing on fees, the court noted that a major portion of the items on the time statement was for telephone calls. In ruling that he would only allow fees for the time spent in court, the trial judge determined that an award which included fees for the numerous phone calls would be unreasonable. On that basis, the court awarded respondent $5,000 in attorney fees which petitioner was ordered to pay. Respondent argues she is entitled to the total attorney fees claimed on the grounds that the fees are reasonable and that petitioner is financially better able to pay the fees.

■ The allowance of attorney fees is within the sound discretion of the trial court, and such an award will not be disturbed in the absence of a clear abuse of that discretion by the court. (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56.) The fee allowance should provide for fair compensation but only for those services which were both reasonable and necessary to the action. (*Donnelley v.*

*Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 373 N.E.2d 576.) Although this was a contested matter, because the issues presented were not unusually complicated, and because a major portion of the requested fees was for phone calls, we see no abuse of discretion in the trial court's ruling that respondent's fee request was unreasonable. Accordingly, we will not disturb the trial court's award of attorney fees.

For the reasons stated above, that part of the circuit court's judgment which merged the unallocated temporary support arrearage into the judgment of dissolution is reversed and remanded for a specific hearing on the issue of an arrearage. In all other respects, the judgment of the circuit court is affirmed.

Judgment affirmed in part and reversed and remanded in part.

McGLOON and GOLDBERG, JJ., concur.